Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7371 | **DATE** | 8/24/2004 |
| **CASE TITLE** | Pliva vs. Baxter Intl., Inc., et. al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pliva's motion for leave to file a sur-reply to defendants' motion to dismiss is denied as moot. For the reasons stated in the attached memorandum opinion and order, defendants' motion to dismiss for forum non conviens and for failure to join indispensable parties and motion to either stay arbitration issues or, alternatively, for limited discovery concerning arbitration are denied. Enter Memorandum Opinion and Order. Status hearing set for 9/29/04 at 9:00 a.m. to stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 2 5 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 64 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MF | courtroom deputy's initials | 2004 AUG 24 PM 4:03 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PLIVA d.d., a Republic of Croatia corporation, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BAXTER INTERNATIONAL INC., a Delaware )<br>corporation; BAXTER HEALTHCARE CORP., )<br>a Delaware corporation; and BAXTER WORLD )<br>TRADE CORPORATION, a Delaware corporation )<br>)<br>Defendants. ) | No. 03 C 7371<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Pliva d.d., filed suit against Defendants for injuries allegedly sustained by hemodialysis patients in Croatia who were treated by "dialyzers" produced by Defendants. Plaintiff alleges claims of Indemnification (Count I); Product Liability (Count II); Breach of Warranty (Count III); Negligence (Count IV); Misrepresentation (Count V); Fraud in Connection with the Design, Manufacture, Testing, and Distribution of Dialyzers (Count VI); Failure to Warn (Count VII); Negligence Regarding Incomplete Registration Documents (Count VIII); and Negligence Regarding Good Manufacturing Practices (Count IX). Presently before the Court are Defendants' Motion to Dismiss for *Forum Non Conveniens* and Failure to Join Two Indispensable Parties and Motion to Either Stay Arbitration Issues or, Alternatively, For Limited Discovery Concerning Arbitration Issues.

64

## ALLEGED FACTS

A reading of the First Amended Complaint, the Answer thereto, and other materials submitted by the parties pursuant to Defendants' motions support the following summary of the alleged operative conduct of the parties.

Pliva is a corporation organized under the laws of Croatia whose business included the purchase and distribution of hemodialysis equipment and medical products. Baxter International Inc. ("BII"), Baxter Healthcare Corp. ("BHC"), and Baxter World Trade Corp. ("BWT") are Delaware corporations with their principal places of business in Deerfield, Illinois. BHC and BWT are alter-egos of BII. Baxter AG and Althin Medical A.B. ("Althin"), are wholly-owned subsidiaries of BII.

In the late 1990s, Althin, a Swedish corporation, introduced a new cellulose acetate fiber called the Althane fiber. The Althane fiber was manufactured at its Miami Lakes, Florida facility and was the basis for the introduction of several new dialyzer models used to assist in the filtering and cleaning of blood during hemodialysis. After the fibers were manufactured in Miami Lakes, the fibers were sent to Ronneby, Sweden, where they were incorporated into the A-15 and A-18 dialyzers. The dialyzers employing the Althane fibers, including the A-15 and A-18, were distributed in the United States and worldwide from 1999 through October 2001.

In March 1999, Althin provided Pliva with documents describing the design, manufacturing, testing, and labels for the A-15 and A-18 dialyzers. In accordance with Croatian and Bosnian law, these registration documents were to be filed with the Croatian Institute for Medicines Control and authorities in Bosnia prior to the distribution or use of medical devices in either country. Relying on the completeness and accuracy of the registration documents, Pliva filed the documents to register the A-15 and A-18 dialyzers for use in Croatia and Bosnia. In the Fall 1999, the Food and Drug

2

Administration determined that the A-15 and A-18 were substantially equivalent to a predicate medical device.

In March 2000, BII acquired Althin. The acquisition included all of Althin's facilities, including those in Miami Lakes, Florida, and Ronneby, Sweden. By March 2000, Defendants had affirmatively reviewed all of Althin's registration documents and ratified their accuracy and completeness. None of the registration documents prepared, reviewed or ratified by Defendants disclosed that the Ronneby facility was using the solvent PF-5070 to repair A-15 and A-18 dialyzers that were then sold in the United States and to Pliva in Croatia.

After the acquisition, Defendants concluded that the scrap rate for the A-15 and A-18 dialyzers was excessively high. In an attempt to lower the loss from the high scrap rate, Defendants ordered the Ronneby facility to institute repair procedures in an effort to salvage the otherwise defective dialyzers. Until Defendants made this decision, the Ronneby facility had never employed a repair procedure that involved the PF-5070 solvent. The A-15 and/or A-18 dialyzers repaired with the PF-5070 solvent were assigned a lot number that ended in the letters "P" for "patch" or "R" for "repair." Prior to patient deaths, Defendants never disclosed the significance of the "P" or "R" coding.

Defendants reviewed and approved the Standard Operating Procedures ("SOP") that were employed to repair dialyzers that failed leak testing. Defendants directed and supervised the manufacturing, testing, repairing, and distribution of thousands of dialyzers repaired with the chemical PF-5070 which was used as an aid to identify air leaks in the fibers. Instead of determining what was causing the high scrap rate, Defendants improperly decided to repair those dialyzers that failed the leak test.

No later than September 2001, Defendants possessed conclusive evidence that the PF-5070 solvent remained in dialyzers that were then in the stream of commerce. Defendants did not amend or supplement their registration documents to disclose this information or to disclose that it was employing repair procedures on certain dialyzers with PF-5070 solvent.

The A-15 and A-18 dialyzers were distributed in Croatia and Bosnia under the labels P-15 and P-18 and under the trademark Plivadial. The P-15 and P-18 were otherwise identical to the A-15 and A-18 dialyzers. Defendants delivered P-15 and P-18 dialyzers to Pliva that were sealed in individual packaging, pre-marked with the Plivadial trademark. Pliva had no role in the designing, testing, manufacturing, or packaging of the dialyzers.

On August 1, 2001, a hemodialysis patient in Nebraska died following dialysis using a dialyzer repaired with the PF-5070 solvent. Defendants learned of the death but suppressed the news of the death and its potential link to a dialyzer with the PF-5070 solvent until October 2001, after other deaths occurred in Croatia and the United States. The dialyzers used in Nebraska were delivered to BHC employee, Susan de la Vega, Director of Quality Assurance, in Miami Lakes in August 2001. Contrary to FDA regulations, neither de la Vega nor Alfredo Ferrer, BHC's Manager of Research and Development at the Miami Lakes facility, conducted failure investigations of the dialyzers. Also in August 2001, twelve hemodialysis patients died in three Spanish hospitals over a fifteen-day period; each of the hemodialysis patients had undergone treatment with repaired A-18 dialyzers.

On August 31, 2001, Defendants recalled certain A-18 dialyzers sent to Spain, France, Greece, and Finland. Defendants did not recall any lots of A-18 dialyzers from Croatia or Bosnia.

The next week, Defendants informed Pliva that all of the products from the two batches had been identified and returned to Baxter.

On September 7, 2001, Defendants announced in a press release that it was performing its own internal tests of the A-18 dialyzers linked to the deaths in Spain. These tests were ordered by James Karr, BHC's Project Manager for Quality Engineering, from his office in Illinois. Defendants hired an independent laboratory, TUV Product Services, to conduct an analysis of two batches of A-18 dialyzers. Defendants did not inform TUV that the dialyzers it had received for testing had been repaired with the PF-5070 solvent. That same month, TUV asked Defendants if they were aware of any other deaths aside from those in Spain that were potentially linked to the subject dialyzers. Although it was aware of deaths in Nebraska, Defendants failed to provide this information to TUV.

By September 9, 2001, Defendants were aware that dialyzers taken from lots from Madrid and Valencia, where the majority of the Spanish deaths were reported, contained residual PF-5070. At no time between September 9, 2001 and October 8, 2001, did Defendants notify anyone that residual PF-5070 was found in dialyzers taken from Spanish clinics.

When confronted with the deaths, Defendants made the internal corporate decision to cover up the truth about the PF-5070 tested products. The senior leaders of the crisis management team were all employees located within Illinois or employees working in the Illinois offices. During the investigation into the Spanish deaths, Defendants suppressed from Pliva, and other customers, that approximately forty Indian dialysis patients died in May 2001, allegedly as a result of using dialyzers manufactured at the Ronneby facility.

In October 2001, Susan de la Vega, at BHC's Miami Lakes facility, told an FDA inspector that since November 2000, she had the responsibility to supervise all design controls for the Ronneby dialyzers because the majority of the research and development staff were located at the Miami Lakes facility. De la Vega was also responsible for failure analysis of patient complaints regarding dialyzers assembled in Ronneby. Ferrer told the FDA that his office possessed detailed records regarding the repair procedures because of the November 2000 transfer of responsibility to oversee design controls for the subject dialyzers from Ronneby to the Miami Lakes facility. Ferrer also told the FDA that he personally ordered certain testing to be performed to assess the safety of the repair procedure prior to completion of the SOP governing the repair procedure. James Karr trained the quality assurance manager at the Ronneby facility on quality assurance procedures in the safe manufacturing and testing of dialyzers.

On October 8, 2001, Defendants authorized a statement warranting to Pliva and others around the world that TUV had confirmed Defendants' own internal tests and "found" that the A-18 was safe for patient use. That same day, a Croatian patient died during dialysis while using a repaired A-15 dialyzer. Three more Croatian patients died the following day, also during or after using a repaired A-15 dialyzer. The Croatian Medical Journal attributed 23 patients in Croatia as having died during or after dialysis using repaired A-15 or A-18 dialyzers. Ensuing autopsies of the Croatian victims detected and identified the existence of foam and bubbles in blood and tissues that results in air emboli, as well as foamed blood in the heart chambers.

From October 8, 2001 through October 20, 2001, two or more United States dialysis patients died during or after dialysis with a repaired dialyzer. On November 5, 2001, Defendants admitted that the PF-5070 that remained in some of the A-15 and A-18 dialyzers after they were repaired

likely played a role in causing the air emboli to form in the patients' blood that caused, contributed to, or played a role in patient deaths. A report by Karr, dated November 7, 2001, confirmed the 100 percent lethality of PF-5070 solvent injected in laboratory animals.

In May 2003, Pliva was sued in Croatia by the first of numerous Croatian dialysis patients who allegedly had received dialysis treatment employing devices manufactured and distributed by Defendants. The injury suits alleged that Croatian patients were injured as a result of exposure to PF-5070 left in dialyzers. Subsequently, Pliva filed the instant suit in this Court.

## ANALYSIS

### *Forum Non Conveniens*

When considering a motion to dismiss based on the *forum non conveniens* doctrine, the court may take into consideration the pleadings, affidavits, and other documentary evidence submitted by the parties. *See Pyrenee, Ltd. v. Wocom Commodities Ltd.*, 984 F. Supp. 1148, 1152 n.2 (N.D. Ill. 1997). Under the *forum non conveniens* doctrine, a court may dismiss a suit over which it would normally have jurisdiction if dismissal best serves the convenience of the parties, the witnesses, and the ends of justice. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947) (*Gulf Oil*); *Macedo v. Boeing Co.*, 693 F.2d 683, 689 (7th Cir. 1982). When faced with a *forum non conveniens* motion, the court considers the following factors: "(1) the availability of an adequate alternate forum; (2) the appropriate deference to plaintiff's choice of forum; (3) 'private interest' factors; and (4) 'public interest' factors." *Ludgate Insurance Co. v. Becker*, 906 F. Supp. 1233, 1336 (N.D. Ill. 1995) (*Ludgate*). The *forum non conveniens* doctrine affords the court wide discretion in its decisions related to its analysis. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).

An adequate alternative forum exists if: (1) all parties are amenable to process in the other forum; and (2) the alternate forum will treat the parties fairly and not deprive the parties of all remedies. *See Kamel v. Hill-Rom Company, Inc.*, 108 F.3d 799, 803 (7th Cir. 1997) (*Kamel*). Baxter suggests Croatia as the most appropriate alternative forum, followed by Sweden.

The Baxter Defendants are amenable to service in either European locale and have agreed to waive any jurisdictional or statute of limitation issues that might arise upon granting of the *forum non conveniens* motion. Baxter also provided affidavits from attorneys fluent in both Swedish and Croatian law, supporting the proposition that the laws and remedies available in each nation are akin to those of this Court. Plaintiff offers no qualitative challenge of the adequacy of the Swedish legal system, and other circuits have held that Sweden offers an adequate forum. *See Automated Marine Propulsion Systems, Inc. v. Aalborg Ciserv Int'l A/S*, 859 F. Supp. 263, 266 (S.D. Tex. 1994); *see also BPA Int'l v. Kingdom of Sweden*, 281 F. Supp. 2d 73, 86 (D.C. 2003).

However, Plaintiff denies that Croatia also offers an adequate forum for this dispute. Former adverse rulings regarding the adequacy of Croatia as a forum were in large part due to the flux in the post-Yugoslavian years and the resultant Civil War in the Balkans. However, Croatia is now a candidate for European Union Membership and could be a full-fledged member as early as 2007; and its legal system and codes were shaped in large part by American advisors and legal standards. Also, the site of many material events and relevant documents are located in both countries, giving each potential jurisdiction. Adequate forums exist in both Sweden and Croatia for the present case. But Plaintiff contends that neither of Defendants' alternative forums have the broad discovery permitted by the federal rules, and there has been no showing that those other court systems are as adept at trying complex product liability and fraud cases as this Court clearly is. Plaintiff further

8

contends that Croatian courts are heavily backlogged and cite a statement by the Minister of Justice that it will take until at least 2006 before the backlog of 1.5 million cases are resolved. Also, the Chief Justice of the Supreme Court determined that fifty new judges are needed to handle the backlog of cases in Zagreb. Based on these considerations, Croatia cannot be said to be an adequate forum for the resolution of this dispute.

The plaintiff's choice of forum is usually afforded substantial deference, particularly when it is the plaintiff's home forum. *Kamel* 108 F.3d at 802. Unless the balance is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed. *Gulf Oil*, 330 U.S. at 508. However, there are other factors to consider; and the weight given to the plaintiff's choice can vary, depending on the circumstances of the individual case. *Georgouses v. NaTec Resources, Inc.*, 963 F. Supp. 728, 730 (N.D. Ill. 1997). Where the plaintiff does not choose his home forum, they are entitled to less deference. *See Interpane Coatings, Inc. v. Australia and New Zealand Banking Group Ltd.*, 732 F. Supp. 909, 915-916 (N.D. Ill. 1990).

In the instant case, Pliva chose to bring suit in the Northern District of Illinois, although its principal place of business is in Croatia; and it seeks indemnification over suits that are pending in Croatia. BII is headquartered in Deerfield, Illinois, and has facilities material to the present case in this District. Deference is granted to Pliva's initial forum choice, so this factor weighs in favor of denying Defendants' *forum non conveniens* motion. However, because many of the situs of material events took place outside of Illinois and the Northern District of Illinois is not Plaintiff's home forum, Pliva's choice cannot be given absolute deference.

9

The "private interest" factors the Court considers include:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the possibility of viewing the premises, if a viewing would be appropriate to the action; and (5) all other practical problems that make the trial of cases easy, expeditious and inexpensive.

*Ludgate*, 906 F. Supp. at 1237.

There are significant amounts of documents and witnesses in both European locales, as well as the United States, so moving to a court on either continent will not resolve this issue. Also, the defendants will not be granted a transfer merely by presenting a long list of witnesses and claiming their inconvenience. *Law Bulletin Publishing Co. v. LRP Publications, Inc.*, 992 F. Supp. 1014, 1017 (N.D. Ill. 1998) (*Law Bulletin*). Courts go beyond simply looking at the number of witnesses and weigh the quality and nature of their proposed testimony. *Law Bulletin*, 992 F. Supp. at 1018. As a practical matter, it is usually assumed that witnesses within the control of the parties will appear voluntarily. Therefore, more attention should be given to the location of the non-party witnesses and those witnesses not within the control of the parties. *Spherion Corp. v. Cincinnati Financial Corp.*, 183 F. Supp. 2d 1052, 1058 (N.D. Ill. 2002).

Here, witnesses and documents are expected from Croatia, Sweden, and various parts of the United States, including the Northern District of Illinois. Many of the documents from Europe will also require translation, but this is necessary no matter what venue is ultimately selected. While a majority of the witnesses to be called reside in Europe, high-ranking Baxter officials are expected to give important testimony, especially regarding the fraud allegations which were pled to the heightened requirements called for by Federal Rule of Civil Procedure 9. Plaintiff points out the

10

gravamen of Pliva's case sounds in fraud and negligence. Defendants' employees responsible for these torts are subject to subpoena in this District, and their live testimony is crucial to Pliva's claims. This Court is the only forum where Pliva is able to compel live testimony of key witnesses who allegedly helped Karr conceal the presence of the PF-5070 solvent in dialyzers a month before scores of people died after using a repaired dialyzer.

Baxter correctly identifies the limitations of the Federal Rules of Civil Procedure, specifically the 100-mile limit of the Court's subpoena power under Rule 45, and its effect upon their ability to compel non-party witnesses to appear. The dialysis machines require priming before proper use; and as such, the physicians in Croatia, who could very well be non-willing witnesses, are important to a proper and complete defense for Baxter. However, while Baxter speculates that the Croatian physicians may not be willing to travel to the United States, it has failed to demonstrate such unwillingness actually exists. On balance, the private interest factors do not weigh in favor of granting the Defendants' motion.

The public interest factors the court considers in connection with a motion to dismiss for *forum non conveniens* include: (1) the court's own docket congestion, (2) the preference for having a forum apply law with which it is familiar, (3) the local interest in resolving the controversy, and (4) the unfairness of burdening the citizens in an unrelated forum with jury duty. *Pyrenee, Ltd. v. Wocom Commodities, Ltd.*, 984 F. Supp. 1148, 1165 (N.D. Ill. 1997). Regarding docket congestion, the court considers it relative to the congestion of other potential venues. *See Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 961 (N.D. Ill. 2000).

The Defendants concede that even at its most efficiency, the wheels of justice in the Croatian court system would grind more slowly than in the Northern District of Illinois. The relative

11

congestion of the Swedish court system is not addressed. Accordingly, this factor weighs against granting Defendants' *forum non conveniens* motion.

Pliva cannot dispute that either Croatian or Swedish substantive law will apply for the present case. Yet, Baxter admits that their respective laws do not differ significantly from that which this Court typically applies. Croatia is said to have relied heavily upon American law and American lawyers to shape its legal system; this also strongly suggests that the differences between Croatian law, regarding the issues presented, and American law are not vast. However, the fact remains that Pliva asks this Court to apply the substantive law of another nation. To a very limited extent, this factor weighs in Defendants' favor.

Regarding the local interest in resolving the controversy, Baxter's corporate headquarters in this District, the presence in this District of several of its top officials purportedly involved in fraud causing several deaths, and Baxter's facility in Round Lake, Illinois, support the significant interest the Northern District of Illinois has in adjudicating these claims. *Hull 753 Corp. v. Elbe Flugzeugwerke*, 58 F. Supp. 2d 925, 930 (N.D. Ill. 1999) (a defendant's home forum has an "interest in providing a forum for redress for injuries caused by one of its citizens"). Accordingly, this factor weighs heavily in favor of denying Baxter's *forum non conveniens* motion.

There is potential burden to this District regarding jury services by its residents for a potentially lengthy and complex jury trial of this case. However, this concern, when weighed against the district's interest as discussed above, does not favor granting Defendants' motion.

In sum, the above factors weigh in favor of denying Defendants' *forum non conveniens* motion for both Sweden and Croatia. Baxter's Motion for *Forum Non Conveniens* is denied.

## Failure to Join Indispensable Parties

Failure to join indispensable parties motions brought pursuant to Federal Rule of Civil Procedure 19 are analyzed via a two-step process. *Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999) (*Thomas*). First, the court determines whether the absent party should be joined if feasible, *i.e.*, whether it is a necessary party. *Thomas*, 189 F.3d at 667. If the party is necessary, but joinder is not feasible, the court must determine if the litigation can proceed in the party's absence, *i.e.*, if the party is an indispensable party. *Thomas*, 189 F.3d at 667.

The determination of whether a party is necessary depends on whether: (1) complete relief can be had without joinder, (2) the absent party's ability to protect its interest will be impaired, and/or (3) the existing parties will face a substantial risk of inconsistent obligations unless the absent party is joined. *Thomas*, 189 F.3d at 667. Once a court finds that the absent party is necessary, it must decide if that party is indispensable to the litigation. *Thomas*, 189 F.3d at 667. Four factors relevant to this determination are:

> (1) the extent to which a judgment entered in the absence of a party will be prejudicial to those currently before the court; (2) the extent to which such prejudice can be lessened or avoided by reshaping the judgment; (3) whether a judgment entered in a party's absence will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed.

*Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990).

Baxter contends both Althin and Baxter AG are indispensable parties to this litigation and that without joinder, the suit must be dismissed. Joinder of either party is not feasible as both are foreign corporations. Furthermore, with Pliva's participation in the suit, diversity jurisdiction would be destroyed if they were joined. The Seventh Circuit has interpreted 28 U.S.C. § 1332(a) to

preclude jurisdiction for suits where a foreign plaintiff sues a U.S. citizen and another foreign entity. *See Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 10 F.3d 425, 428 (7th Cir. 1993); *see also Karazanos v. Madison Two Assoc.*, 147 F.3d 624, 626-27 (7th Cir. 1998). The federal courts' supplemental jurisdiction cannot be used to leap this jurisdictional hurdle. *See* 28 U.S.C. § 1367(b), *see also Extra Equipamentos E Exportado Ltda. v. Case Corp.*, 361 F.3d 359, 361 (7th Cir. 2004) (*Extra*). Accordingly, joinder is not feasible.

A motion to dismiss for failure to join an indispensable party is addressed to the district court's discretion. *Extra*, 361 F.3d at 362. Baxter represented that it would appear in both Sweden and Croatia and waive any jurisdictional or statute of limitation issues, so dismissal of the suit will not force Pliva to abandon its claims but merely to seek them in other courts.[1] These factors, if true, would render Althin and Baxter AG indispensable parties to this litigation.

However, Althin and Baxter AG are both wholly-owned subsidiaries of Baxter. Nothing in the record before the Court indicates that Baxter has differing interests with that of its subsidiaries. This common interest provides an incentive for the Baxter Defendants to litigate this suit properly and completely, and Baxter AG and Althin can depend on the Defendants to vigorously defend their interests in this litigation in this forum. Therefore, Althin or Baxter will not be unfairly prejudiced if they are not joined. Since Baxter owns both entirely, a judgment against the subsidiaries would cost Baxter the same amount as if it had been levied against Baxter itself.

---

[1] However, Plaintiff points out that "These Baxter defendants admit that they do not do business in Sweden or Croatia and have promised, on those grounds, to contest jurisdiction of those fora if this Court grants their motion. Motion p.11, n.6. In light of their brazen admission ... granting defendants' motion will directly controvert Seventh Circuit holdings because Pliva would be unable to establish personal jurisdiction over these defendants in either fora and the case will die."

> If [parent] and [subsidiary] were separately owned, [subsidiary] could not rely on [parent] to protect its interests in the Northern District litigation if [subsidiary] were not (as it cannot be) a party. But given the complete identity of interests by virtue of [parent's] being the sole owner of [subsidiary], we find it hard to see how [subsidiary] can be harmed by not being made a party to suit in Chicago.... Since [parent] owns all of [subsidiary], the judgment would cost [parent] the same amount, so it would have identical incentive to defend [subsidiary's] interests in Chicago as [subsidiary] would have if it could be joined as a party.

*Extra*, 361 F.3d at 364. Furthermore, a 100 percent owned subsidiary is not an indispensable party where the parent company is already a party to the litigation. "We have great difficulty seeing how a 100 percent subsidiary could *ever* be an indispensable party." *Extra*, 361 F.3d at 364. This factor weighs conclusively against indispensability.

Baxter also alleges that the subsidiaries have possible counterclaims against Pliva and played important parts in the events that brought this case to the Court. But, since Baxter AG is not a party in the litigation, it will not be barred from raising its claims for invoices outstanding against Pliva. While judicial efficiency would usually call upon the Court to adjudicate all claims possible within one trial, this merely points to Baxter AG's being a party to join if feasible. Accordingly, these factors fail to demonstrate the parties' indispensability.

In sum, the above factors weigh in favor of denying Defendants' failure to join Althin and Baxter AG as indispensable parties motion. Baxter's Motion for Failure to Join Indispensable Parties is denied.

## Stay of Arbitration Issues and/or Limited Arbitration Discovery

Defendants also seek to either stay the arbitration issues or for limited discovery on such issue while the above motion to dismiss is pending. These issues are denied as moot in light of the above ruling.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for *Forum Non Conveniens* and For Failure to Join Two Indispensable Parties and Motion to Either Stay Arbitration Issues or, Alternatively, For Limited Discovery Concerning Arbitration Issues are denied.

Dated: 8-24-04

JOHN W. DARRAH
United States District Judge